United States District Court
Southern District of Texas
**ENTERED**
October 21, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NABORS DRILLING TECHNOLOGIES USA INC and NABORS INDUSTRIES INC, | § § § § | CIVIL ACTION NO. 4:19-cv-02854 |
| Plaintiffs, | § § | |
| | § | |
| vs. | § § | JUDGE CHARLES ESKRIDGE |
| | § | |
| DEEPWELL ENERGY SERVICES LLC and LIBERTY MUTUAL FIRE INSURANCE COMPANY, | § § § § § | |
| | § | |
| Defendants. | § | |

OPINION AND ORDER
GRANTING SUMMARY JUDGMENT IN PART

Plaintiffs Nabors Drilling Technologies USA Inc and Nabors Industries Inc and Defendants Deepwell Energy Services LLC and Liberty Mutual Fire Insurance Company have all moved for partial or full summary judgment. See Dkts 21 (Deepwell), 22 (Liberty Mutual), and 23 (Nabors entities). Each motion is granted in part and denied in part.

In summary, Texas law governs the obligations of the parties under the Master Service Agreement at issue; Liberty Mutual has a duty to defend and indemnify the Nabors entities if they qualify as additional insureds under the policy; if Nabors is assigned any liability in the underlying action and Deepwell is required to indemnify, then the coverage cannot exceed $500,000; and the action

will be abated pending resolution of the underlying liability determination.

1. Background

Plaintiffs Nabors Drilling Technologies USA Inc and Nabors Industries Inc are both subsidiaries of the same parent corporation. Dkt 4. They will be referred to together as *Nabors*.

Nabors entered into a Master Service Agreement with Defendant Deepwell Energy Services LLC in October 2015. Dkt 23-1 (MSA). Under the MSA, "Deepwell was approved as a full cycle rigger in all regions, and approved to perform work in any state except for the State of North Dakota." Dkt 21-1 at 31 (objections and answers to Deepwell's first set of interrogatories).

The following are the MSA provisions most pertinent to this action.

Section 9 of the MSA pertains to insurance. It provides in relevant part:

a. As a separate and independent obligation and without limiting the indemnity obligation of Contractor or its insurers, at any and all times during the term of the Agreement, Contractor shall, at Contractor's sole expense, carry insurance . . . for the types of insurance and in minimum amounts as follows:

. . . .

iii. Comprehensive General Liability Insurance on an occurrence basis, including contractual liability, sudden and accidental pollution, and products liability/completed operations coverage, including without limitation insurance for the indemnity agreements set forth in the Agreement, with limits of not less than $1,000,000 per occurrence covering to [sic] bodily injury, sickness or death, personal injury, broad form, property damage

2

premises/operations, independent contractors, underground resources, underground property damage, loss of or damage to property.

. . . .

b. The Nabors Group shall be named as additional insured in each of Contractor's policies, except Workers' Compensation.

c. All policies shall be endorsed to provide that underwriters and insurance companies of Contractor shall not have any right of subrogation against the Nabors Group or their underwriters and insurance companies.

. . . .

f. It is hereby understood . . . that any coverage provided to Nabors Group by Contractor's insurance under the Agreement is primary insurance with respect to the obligations of Contractor under any Contract, and shall not be considered contributory insurance with any insurance policies of Nabors Group.

Dkt 23-1 at 4–5 (MSA); Dkt 22 at 4–5.

Section 10 of the MSA pertains to risk allocation and indemnity. It provides in relevant part:

c. Contractor shall be liable for, and hereby releases, all claims against Nabors Group with respect to all losses, costs, damages, expenses and legal fees which Contractor may suffer, sustain, pay or incur directly or indirectly arising from or on account of bodily injury to or death of any persons in the Contractor Group or damage to or loss of property owned by a member of the Contractor Group arising out of or relating to the Agreement or any Contract. In addition, Contractor shall defend, indem-

nify, and hold harmless Nabors Group against all Claims arising from or related to (1) bodily injury to or death of any person in the Contractor Group, or loss of or damage to any property owned by a member of the Contractor Group (2) bodily injury or death of any person or loss of or damage to any property resulting from any negligent act or willful misconduct of any person within the Contractor Group.

d.  Except as otherwise specified herein, the liability, release and indemnity provisions contained in this Agreement shall apply notwithstanding any breach or alleged breach of this Agreement or any Contract and shall be without regard to cause or causes, including without limitation pre-existing defects in equipment or materials, the negligence, whether sole, concurrent, active, passive, primary or secondary, of either party or any other person including without limitation the party or person being released or indemnified, or otherwise, strict liability or the unsea-worthiness of any vessel ingress and egress, loading and unloading.

. . . .

h. The indemnity obligations contained in this Agreement or any Contract with respect to the injury to or death of any person in the Contractor Group or damage to or loss of property of any member of the Contractor Group shall be supported by liability insurance coverage in the amounts set forth in article 9 above.

i. The parties are cognizant of statutes in various jurisdictions that nullify in whole or in part the indemnity obligations contained herein to the extent of the

indemnitee's negligence (including but not limited to Tex. Civ. Prac. & Rem. Code § 127.001, *et seq*, La. Rev. Stat. 9:2780, N.M. Stat. Ann. §56-7-2 and Wyo. Stat. §30-1-131, *et seq*.) and of the public policy considerations underlying those statutes. Notwithstanding those statutes, the public policy considerations and the cases decided under those statutes, the parties confirm their intent to voluntarily honor and abide by the terms of the indemnity provisions in this Agreement, despite any nullifying effect the statutes or cases may have thereon.

Dkt 23-1 at 5–7 (MSA).

Deepwell furnished certificates of liability insurance in conjunction with executing the MSA. These certificates represented that its policies provided Nabors "Blanket Additional Insured Primary and Non-Contributory" coverage along with general commercial and excess liability coverages. Dkt 23-3 at 1–2. Deepwell reaffirmed that its general commercial liability policy provided that same blanket coverage in a 2018 certificate of liability insurance that identified Liberty Mutual as its insurer. Id at 3. Indeed, Liberty Mutual issued Commercial General Liability Policy No TB2-641-445005-018 to Deepwell as the first-named insured with an effective date from July 1, 2018 to July 1, 2019. Dkt 30-5 (insurance policy).

The CGL policy generally covers "bodily injury and property damage liability," but it doesn't apply if the insured assumed such liabilities by contract. Id at 15–16. But that exclusion itself doesn't apply when the insured assumes the tort liability of another to pay for bodily injuries to third persons through an *insured contract*. Id at 16, 28. The MSA is an insured contract, as Deepwell assumed the tort liability of Nabors to pay for bodily injuries to any of its employees or contractors performing work under the MSA. Dkt 23-1 at 5–7. So the policy covers liabilities for bodily injuries arising under the MSA, and it

extends such coverage to additional insureds, which (as discussed below) Nabors may be. Ibid; Dkt 30-5 at 15–16, 28, 57; Dkt 23-3 at 1–2.

A Deepwell employee named Rashaan Jones was injured on a drilling rig owned and operated by Nabors in Eddy County, New Mexico in August 2018. Dkt 21-1 at 20 (incident report); Dkt 22-1 at 2 (state petition). Jones claims he "was attempting to remove a pin on a gas buster on the rig" and ultimately severed two of his fingers. Dkt 22-1 at 2; Dkt 21-1 at 20. Jones is a citizen of Louisiana. But he brought action in December 2018 against Nabors in Texas state court, seeking compensatory and punitive damages on claims for negligence and gross negligence. See Dkt 22-1, citing *Jones v Nabors Drilling Technologies USA Inc*, No 2018-87021, in the 125th District Court, Harris County, Texas.

Nabors sent a tender for defense, indemnity, and coverage as additional insured to Deepwell in February 2019 and asked it to notify Liberty Mutual. Dkt 23-5. Nabors there insisted that Jones was an employee of Deepwell at the time of his injury and was working in the course and scope of his employment under the MSA. Deepwell forwarded the letter to Liberty Mutual, which denied the tender in April 2019. Dkt 23-6. It reasoned that Nabors isn't entitled to additional-insured status under the policy because the New Mexico Oilfield Anti-Indemnity Act "nullifies the indemnification provisions of an agreement pertaining to an oil well or gas well." Id at 4. Even so, a Liberty Mutual representative sent an email to Deepwell in September 2019 acknowledging that "under Texas law, Nabors may ultimately qualify as an additional insured, but Liberty has no present duty to defend. If Deepwell or Jones himself is partly responsible for the injury, Nabors will be entitled to indemnity coverage as an additional insured." Dkt 23-7.

Nabors brought this action against Deepwell and Liberty Mutual in Texas state court in June 2019. It seeks a declaration affirming that it's entitled to defense and indemnity for costs arising out of the underlying tort

6

action. And it seeks a further declaration affirming that it's entitled to defense and indemnity as an additional insured pursuant to the policy issued by Liberty Mutual. Dkt 1-2 at 1–9.

Liberty Mutual removed the action with Deepwell's consent in August 2019 pursuant to 28 USC §§ 1332, 1441, and 1446. Dkt 1–2. Liberty Mutual then filed an amended answer and counterclaim for declaratory relief in February 2020. Dkt 16. It requests a declaration that New Mexico law applies to the indemnity and insurance disputes in this case, and that the New Mexico Oilfield Anti-Indemnity Act voids any additional-insured duties that Liberty Mutual would otherwise owe to Nabors. But if determined that Texas law applies, it requests declarations in the alternative that it has no present duty to defend Nabors against the allegations in Jones's lawsuit, and that the policy limits any indemnity obligation in that underlying suit to $500,000. Dkt 16 at 10–11.

Liberty Mutual and Nabors moved for summary judgment. Dkts 22 & 23. Deepwell has moved for partial summary judgment. Dkt 21.

### 2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists

that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

When parties file opposing motions for summary judgment on the same issue, the court reviews each motion independently, each time viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010). Each movant must establish that no genuine dispute of material fact exists, such that judgment as a matter of law is in order. Ibid; see also *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009).

3. Motion for partial summary judgment by Deepwell

Deepwell raises three arguments in favor of its motion for partial summary judgment. These largely overlap with issues presented by Nabors and Liberty Mutual. They are addressed at length here, with resolution of the other two motions following consistently from such determinations.

Deepwell first argues that the law of New Mexico—and not Texas—should apply to the indemnity and insurance issues in this case. Dkt 21 at 8–17. On assumption that this means that the New Mexico Oilfield Anti-Indemnity Act applies to the MSA, it next argues that this nullifies any indemnity obligation. Id at 17–18. And Deepwell argues in the alternative that "Nabors may qualify as an additional insured" under its policy with Liberty Mutual because it "complied with the insurance obligations of the MSA and with the requirement of its policy." Id at 7, 18–19. But to be clear, Deepwell doesn't request any specific relief in its motion other than asking for a general determination as to the choice of law issue and related consequences.

a.   Choice of law and the MSA

Section 22 of the MSA is a choice-of-law provision that provides in relevant part:

> The interpretation and performance of this Agreement and each Contract hereunder shall be governed by and interpreted in accordance with the general maritime law, without regard to its rules on conflict of laws. In the event general maritime law is deemed inapplicable to any indemnification provision(s) and/or obligation(s) in this Agreement or any Contract, the indemnification provision(s) and/or obligation(s) shall be governed by and interpreted in accordance with the laws of the State of Texas, without regard to its rules on conflict of laws.

Dkt 21-1 at 11.

No one asserts that general maritime law applies here. But the parties join issue as to whether the alternative selection of Texas law should be displaced by that of New Mexico.

i.   Texas and New Mexico law compared

"The New Mexico and Texas legislatures have enacted statutes that generally void agreements that purport to

create indemnity for an oilfield indemnitee's sole or concurrent negligence." *North American Tubular Services LLC v BOPCO LP*, 2018 WL 4140635, \*4 (Tex App—Fort Worth 2018, no pet), citing NM Stat Ann § 56-7-2 and Tex Civil Practice & Remedies Code Ann § 127.003(a). But Texas allows for exceptions to its general rule, while New Mexico doesn't.

The Texas Oilfield Anti-Indemnity Act provides:

> (a) Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:
>
> (1) is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee; and
>
> (2) arises from:
>
> (A) personal injury or death;
>
> (B) property injury; or
>
> (C) any other loss, damage, or expense that arises from personal injury, death, or property injury.

Tex Civil Practice & Remedies Code Ann § 127.003(a). Oilfield indemnity agreements are thus generally void under Texas law if they purport to indemnify an entity against loss or liability for damages contrary to the terms of § 127.003(a). See *North American Tubular Services*, 2018 WL 4140635 at \*5.

But Texas law doesn't preclude oilfield indemnity agreements if "the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor." Tex Civil Practice & Remedies Code Ann § 127.005(a).

Such clauses must also "meet certain fair notice requirements" to be valid. *Chesapeake Operating Inc v Nabors Drilling USA Inc*, 94 SW3d 163, 169 (Tex App— Houston [14th Dist] 2002, no pet, *en banc*), citing *Dresser Industries Inc v Page Petroleum Inc*, 853 SW2d 505, 509 (Tex 1993). Texas law affords this exception because of a related and clearly stated legislative finding:

> (c) The legislature finds that joint operating agreement provisions for the sharing of costs or losses arising from joint activities, including costs or losses attributable to the negligent acts or omissions of any party conducting the joint activity:
>
> (1) are commonly understood, accepted, and desired by the parties to joint operating agreements;
>
> (2) encourage mineral development;
>
> (3) are not against the public policy of this state; and
>
> (4) are enforceable unless those costs or losses are expressly excluded by written agreement.

Tex Civil Practice & Remedies Code Ann § 127.002(c).

Like its Texas counterpart, the New Mexico Oilfield Anti-Indemnity Act provides in relevant part:

> A. An agreement, covenant or promise, foreign or domestic, contained in, collateral to or affecting an agreement pertaining to a well for oil, gas or water, or mine for a mineral, within New Mexico, that purports to indemnify the indemnitee against loss or liability for damages arising from the circumstances specified in Paragraph (1), (2) or (3) of this subsection is against public policy and is void:
>
> (1) the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee;

11

(2) the sole or concurrent negligence of an independent contractor who is directly responsible to the indemnitee; or

(3) an accident that occurs in operations carried on at the direction or under the supervision of the indemnitee, an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee.

. . . .

C. A provision in an insurance contract indemnity agreement naming a person as an additional insured or a provision in an insurance contract or any other contract requiring a waiver of rights of subrogation or otherwise having the effect of imposing a duty of indemnification on the primary insured party that would, if it were a direct or collateral agreement described in Subsections A and B of this section, be void, is against public policy and void.

NM Stat Ann § 56-7-2(A), (C). "By requiring an indemnitee to remain responsible for its own negligence, Section 56-7-2 protects third parties whose person or property would be placed at risk by the indemnitee's indifference to safety." *Pina v Gruy Petroleum Management Co*, 136 P3d 1029, 1034 (NM Ct App 2006). This means that § 56-7-2 subordinates "public policies favoring the freedom to contract to the safety goals promoted by the section." *North American Tubular Services*, 2018 WL 4140635 at *5, citing *United Rentals Northwest Inc v Yearout Mechanical Inc*, 237 P3d 728, 734 (NM 2010).

But unlike the Texas Legislature, the New Mexico Legislature hasn't enacted a corresponding provision that exempts certain oilfield indemnity agreements from the general prohibition. Oilfield indemnity agreements are

therefore unenforceable under New Mexico law without exception.

As such, the laws of Texas and New Mexico are squarely in conflict, with the indemnity provision at issue enforceable under the former but not under the latter. This means that a choice must be made between them.

ii.   Choice of applicable law

Deepwell argues that New Mexico law governs the interpretation of the MSA notwithstanding the choice within the MSA itself in favor of Texas. Dkt 21 at 8. In support, Deepwell asserts that "application of Texas law under the clause would be contrary to a fundamental policy of New Mexico, as the state with a materially greater interest in this dispute than Texas." Id at 9.

"When sitting in diversity, federal courts apply the substantive state law of the state in which the district court sits, including the forum state's choice-of-law rules." *Boudreaux v C J R Framing Inc*, 744 F App'x 208, 209 (5th Cir 2018, *per curiam*), citing *Klaxon Co v Stentor Electric Manufacturing Co*, 313 US 487, 496–97 (1941). And "Texas law recognizes the 'party autonomy rule' that parties can agree to be governed by the law of another state." *Exxon Mobil Corp v Drennen*, 452 SW3d 319, 324 (Tex 2014). Indeed, respecting the choice-of-law provisions of the parties "advances the policy of protecting their expectations." *DeSantis v Wackenhut Corp*, 793 SW2d 670, 677 (Tex 1990).

But this contractual freedom isn't unlimited. For example, the parties can't "require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement" or attempt to "thwart or offend the public policy of the state the law of which ought otherwise to apply." Ibid. The Fifth Circuit has thus observed that "although Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is not uncommon for a party to overcome them." *Cardoni v Prosperity Bank*, 805 F3d 573, 581 (5th Cir 2015) (collecting cases).

The Texas Supreme Court has adopted § 187 of the Restatement (Second) of Conflict of Laws to determine whether a choice of law provision is enforceable. *Drennen*, 452 SW3d at 324–25, citing *DeSantis*, 793 SW2d at 677–78. Section 187(1) provides, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Section 187(2) then further specifies:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Two points are readily apparent. The first is that the parties specified Texas law as applicable to later disputes that might arise under the MSA. The pertinent question is whether that conscious, objective choice should be displaced.

The second is that § 187(2)(a) plainly doesn't apply. Nabors has its principal places of business in Texas, and

14

Deepwell does business in Texas. Dkt 1-2 at ¶¶ 1–3. Texas therefore has a substantial relationship to the parties, providing an eminently reasonable basis for the parties' choice to apply Texas law under the MSA. See *Drennen*, 452 SW3d at 325.

The controlling inquiry thus turns on § 187(2)(b). It internally references § 188, which sets out the standard for determining what state "has the *most significant relationship* to the transaction and the parties under the principles stated in § 6." (emphasis added). This is a complex inquiry, focusing on a comparison of the contractual selection with the alternative selection argued by the challenging party. In short, the parties' selection controls unless the other state "(1) has a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188; (2) has a materially greater interest than the chosen state does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of the chosen state's law." *Cardoni*, 805 F3d at 582, citing *Drennen*, 452 SW3d at 325–27.

All three elements must be satisfied before a Texas court may deviate from the contract's choice of law. *Banta Oilfield Services Inc v Mewbourne Oil Co*, 568 SW3d 692, 710–11 (Tex App—Texarkana 2018, pet denied), quoting *Gator Apple LLC v Apple Texas Restaurants Inc*, 442 SW3d 521, 533 (Tex App—Dallas 2014, no pet).

### A. More significant relationship under § 187(2)(b)

As noted, the initial element considered under § 187(2)(b) is "whether there is a state the law of which would apply under section 188 of the Restatement absent an effective choice of law by the parties." *Drennen*, 452 SW3d at 325, quoting *DeSantis*, 793 SW2d at 678 (quotation marks omitted). Section 188(1) then provides, "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."

This itself entails a two-part inquiry. *First,* a court must assess the contacts by reference to those contacts set forth in § 188(2) and weigh them "not by their number, but by their quality." *Minnesota Mining & Manufacturing Co v Nishika Ltd*, 955 SW2d 853, 856 (Tex 1996). *Second*, those weighted contacts must be considered "in light of the basic conflict of laws principles of section 6 of the Restatement." Id at 736; *DeSantis*, 793 SW2d at 678 & n 2; *Maxus Exploration Co v Moran Brothers*, 817 SW2d 50, 54 (Tex 1991).

### I.   Contacts under § 188(2) assessed and weighed

Texas courts consider the contacts listed in § 188(2) when determining which state has a *more significant relationship* to the relevant transaction and parties. Those contacts include:

- o   *First,* the place of contracting;
- o   *Second,* the place of negotiation of the contract;
- o   *Third,* the place of performance;
- o   *Fourth,* the location of the subject matter of the contract, and
- o   *Fifth,* the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Chesapeake*, 94 SW3d at 170, citing Restatement (Second) of Conflict of Laws § 188(2); see also *Cardoni*, 805 F3d at 582, citing Restatement (Second) of Conflict of Laws § 188(2). Determining which contacts to consider in deciding which state's law governs "involves a factual inquiry." *Hughes Wood Products Inc v Wagner*, 18 SW3d 202, 204 (Tex 2000). "Thus, a movant for summary judgment seeking to have the law of another state applied must satisfy its burden of proof with respect to fact questions necessary to the choice of law decision." Id at 205.

Once it's determined which state is the appropriate contact as to each of the above, those contacts must then be evaluated "according to their relative importance with respect to the particular issue" implicated in the dispute.

*Chesapeake*, 94 SW3d at 173. The contacts are weighed in this regard "not by their number, but by their quality." Ibid, citing *Minnesota Mining & Manufacturing*, 955 SW2d at 856.

*As to the place of contracting.* The place of contracting is "where occurred that last act necessary . . . to give the contract binding effect." *3D/International Inc v Romano*, 811 F App'x 244, 249 (5th Cir 2020, *per curiam*) (applying Texas law), quoting Restatement (Second) of Conflict of Laws § 188, comment e. But it is readily apparent that the place of contracting is "a relatively insignificant contact." *Sonat Exploration Co v Cudd Pressure Control Inc*, 271 SW3d 228, 233 n 22 (Tex 2008), quoting Restatement (Second) of Conflict of Laws § 188, comment e.

Nabors executed the MSA in Texas, and Deepwell executed it in Mississippi. See Dkt 21 at 4; Dkt 21-1 at 30. It's unclear which party last signed the MSA, thus making it binding. But what's quite clear is that this contact in no way favors New Mexico. At best, it weighs in favor of applying Texas law. Regardless, it will be assigned little significance.

*As to the place of negotiation of the contract.* The place where the parties negotiate and agree on the terms of their contract is ordinarily considered "a significant contact." Restatement (Second) of Conflict of Laws § 188, comment e. But this contact "is of less importance . . . when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." *Sonat Exploration*, 271 SW3d at 233 n 22, quoting Restatement (Second) of Conflict of Laws § 188, comment e.

The latter scenario is what happened here. Nabors negotiated the MSA from Texas, and Deepwell negotiated it from Mississippi. Dkt 21 at 4; Dkt 21-1 at 30. Again, the contact in no way favors New Mexico. At best, it slightly favors applying Texas law. But like the first contact, it will be assigned little significance.

*As to the place of performance.* "The state where performance is to occur under a contract has an obvious

interest in the nature of the performance and in the party who is to perform." Restatement (Second) of Conflict of Laws § 188, comment e. But there are two possible meanings of the *place of performance* in the context of an MSA involving an oilfield indemnity provision. One is the place "where the drilling services were performed," and the other is "where the indemnity obligation was performed (by defending against the injured employee's suit)." *Chesapeake*, 94 SW3d at 171, quoting *Maxus*, 817 SW2d at 53. Given that it is the indemnity clause at issue in this dispute, the latter meaning will guide the inquiry.

Jones was injured in New Mexico. But every other meaningful measure points to Texas as the place of performance. Jones brought action against Nabors in Texas. Dkt 21-1 at 22–26. Nabors and Deepwell agreed between themselves that jurisdiction would "lie exclusively with the state and federal courts in Houston" if any dispute relating to the MSA (or any obligation thereunder) arose. Dkt 22-2 at 9. And Nabors of course brought this action against Deepwell and Liberty Mutual in Texas. This means that any judgments in both actions will be entered in Texas, the attorney fees sought in both cases have been and will continue to be incurred in Texas, and the impact of any indemnification between Nabors and Deepwell will be felt primarily in Texas, where the former is domiciled and headquartered.

This means that Texas has a more significant relationship with the place of performance. See *Chesapeake*, 94 SW3d at 171–72. Indeed, Deepwell essentially concedes this point. Dkt 21 at 10–11. Significant weight is appropriately assigned to this contact.

*As to the location of the subject matter of the contract.* "When the contract deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant." Restatement (Second) of Conflict of Laws § 188, comment e. But the location of the subject matter isn't significant "when the parties contemplate

services in several different states." *Sonat Exploration*, 271 SW3d at 233, citing Restatement (Second) of Conflict of Laws § 188, comment e.

Relying on *CMA-CGM (America) Inc v Empire Truck Lines*, Deepwell contends that "the subject matter factor weighs decidedly in favor of the application of New Mexico law" because "the work being performed and/or services being provided at the time of the Incident" took place in New Mexico. Dkt 21 at 11, citing 416 SW3d 495, 514 (Tex App—Houston [1st Dist] 2013, pet denied). But the *CMA-CGM* court held that the location of the subject matter of that contract was Texas because the plaintiff hired the defendant to move its equipment "from one Texas location to another Texas location." 416 SW3d at 514. Nothing here establishes that the parties ever executed any contract specific to New Mexico (or any other state).

There are instead two possible understandings of the location of *the subject matter of the contract* here. One is the location of the subject matter of the contract *as a whole*—in this case, drilling services. But that's an unnatural application of the phrase, where choice-of-law analysis drills down in a much more particularized way to the pertinent issues in dispute and the state policies that might impact its resolution. Regardless, the contact would carry little significance if so construed. Under the MSA, "Deepwell was approved as a full cycle rigger in all regions, and approved to perform work in any state except for the State of North Dakota." Dkt 21-1 at 31. The parties therefore contemplated that Deepwell would provide services to Nabors in forty-nine states, with the MSA never specifically mentioning New Mexico. Per *Sonat Exploration*, this means that the precise location carries little weight. 271 SW3d at 233.

The other is the location of the subject matter of the *particular issue to be resolved* under the contract—here, the indemnification obligation. This is the better understanding, and it weighs substantially in favor of Texas for the same reasons expressed above. Quite simply, the indemnity clause is intended to eliminate or minimize

the risk of liability to Nabors. This localizes to Texas because the headquarters of Nabors are here. What's more, any judgment will be entered in Texas because the parties agreed that "the state and federal courts in Houston, Harris County, Texas" will exercise exclusive jurisdiction over any claim arising out of the MSA. Dkt 21-1 at 11.

*As to the domicile, residence, nationality, place of incorporation, and place of business of the parties.* Each of these represents an enduring relationship to a particular state, but their significance "depends largely upon the issue involved and upon the extent to which they are grouped with other contacts." Restatement (Second) of Conflict of Laws § 188, comment e. "The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party to the contract is domiciled or does business." Ibid. The Restatement emphasizes that "a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state." Ibid. Moreover, state and federal courts generally apply "the law of the parties' domiciles when considering conflicting indemnity laws." *Chesapeake*, 94 SW3d at 173 (collecting cases).

Nabors is a Delaware corporation and Deepwell is a Mississippi LLC. Dkt 1-2 at 1; Dkt 21 at 4. Deepwell also concedes that Nabors is domiciled and headquartered in Texas, while it is domiciled and headquartered in Mississippi. Dkt 21 at 11. This contact thus heavily favors Texas, particularly when combined with the prior conclusion that Texas is the place of performance and the location of the subject matter of the contract. Cf *Maxus Exploration Co v Moran Brothers Inc*, 817 SW2d 50, 54, 57 (Tex 1991) (declining to apply Texas law to indemnification dispute between two Texas companies arising from personal injury action in Kansas state court that began after they contracted to drill single oil well in Kansas with

no choice-of-law selection). And once again, nothing about this contact favors New Mexico.

## II.   Contacts considered in light of § 6 factors

The number of contacts that weigh in favor of a jurisdiction "is less important than the qualitative nature of those contacts as affected by the policy factors" of § 6. *Murthy v Abbott Laboratories*, 847 F Supp 2d 958, 966 (SD Tex 2012), citing *Gutierrez v Collins*, 583 SW2d 312, 319 (Tex 1979).

The weighted contacts above must therefore be evaluated in light of the principles articulated under Restatement (Second) of Conflict of Laws § 6. See *Maxus*, 817 SW2d at 54, 57, citing Restatement (Second) of Conflict of Laws § 188(2). These principles include:

- o  *First,* the needs of the interstate and international systems;
- o  *Second,* the relevant policies of the forum;
- o  *Third,* the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
- o  *Fourth,* the protection of justified expectations;
- o  *Fifth,* the basic policies underlying the particular field of law;
- o  *Sixth,* certainty, predictability and uniformity of result; and
- o  *Seventh,* ease in the determination and application of the law to be applied.

*Chesapeake*, 94 SW3d at 175, citing Restatement (Second) of Conflict of Laws § 6. These principles must be considered because "the parties' expectations as stated in their contract should not be frustrated by applying a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule." *Sonat Exploration*, 271 SW3d at 235.

*As to the needs of the interstate and international systems.* The Restatement observes, "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well." Restatement (Second) of Conflict of Laws § 6 comment d. Choice-of-law rules thus "should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Ibid. "Industry and commerce cannot operate in a climate that allows a contracting party who makes a bad bargain to change the terms of a deal at its option." *Chesapeake*, 94 SW3d at 177.

Deepwell agreed to be bound by Texas law should any dispute arise out of its contract with Nabors. And the MSA includes an indemnity provision in accord with Texas law. Deepwell now seeks to repudiate that bargain to avoid its indemnification duties. Giving sanction to such strategy would undermine the needs of the interstate and international systems of commerce by promoting uncertainty and increasing transaction costs. As such, this principle weighs heavily in favor of applying Texas law— and not Deepwell's expedient arguments in favor of New Mexico law.

*As to the relevant policies of the forum.* Texas has a "strong commitment to the principle of contractual freedom." *Churchill Forge Inc v Brown*, 61 SW3d 368, 371 (Tex 2001). The Texas Supreme Court further instructs, "When a contract involves oilfield work in many states, sophisticated parties should generally be free to designate the law that will govern their relationship and have that choice respected." *Sonat Exploration*, 271 SW3d at 236.

The parties expressly agreed to the application of Texas law when executing the MSA. Dkt 21-1 at 11. Texas policy strongly favors enforcing that choice.

*As to the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.* The New Mexico Oilfield Anti-Indemnity Act "protects third parties whose person or property would be placed at risk by the indemnitee's indifference to safety." *Pina*, 136 P3d 1029, 1034 (NM Ct

App 2006). New Mexico certainly maintains an interest in protecting anyone within its borders from injury. This is true even as to Jones, who isn't a domiciliary of New Mexico but was injured there while working. Dkt 21-1 at 23. But New Mexico can't be said to have a strong interest in this particular dispute, where nothing suggests that New Mexico (or one of its citizens) will bear any resulting burden from either this or the underlying lawsuit.

*As to the protection of justified expectations.* "In cases with a choice-of-law provision in an agreement, protection of the justified expectations of the parties is the most significant and important factor in the choice-of-law analysis." *VTX Communications LLC v AT&T Inc*, 2020 WL 4465968, *3 (SD Tex), citing *Sonat Exploration*, 271 SW3d at 235.

The MSA governs a complex arrangement between Nabors and Deepwell, whereby the latter would move the oil-drilling rigs of the former as directed between and among forty-nine states. Dkt 21-1 at 3–13 (MSA). And they agreed that Texas law would apply regardless of any particular location that might be relevant to a dispute. Id at 11. Nabors is thus quite justified when expecting Texas law to apply, since that's precisely what Deepwell agreed to. On the other hand, nothing suggests that New Mexico or its law pertains in any way to the interpretation and enforcement of the MSA.

*As to the basic policies underlying the particular field of law.* At base, this is a contract dispute as to issues of indemnification and insurance coverage. And a basic policy underlying Texas contract law is, not surprisingly, "[p]rotection of the justified expectations of the parties." *Chesapeake*, 94 SW3d at 176, quoting Restatement (Second) of Conflict of Laws §188 comment b (quotation marks omitted) (alteration in original), and citing *DeSantis*, 793 SW2d at 677.

New Mexico policy is in accord, evincing a strong policy in favor of protecting legitimate contractual interests—unless the contract "clearly contravenes" some other public policy. *Miller v Cincinnati Insurance Co*, 323 F Supp 3d

1253, 1260 (D NM 2018) (cleaned up). "New Mexico's public policy of freedom to contract has frequently been found stronger than the policies alleged to be violated by contract provisions." *Security Insurance Co of Hartford v Clovis Insurance Center Inc*, 2006 WL 8444163, *7 (D NM).

*As to certainty, predictability, and uniformity of result.* The Texas Supreme Court holds, "Enforcing contracts according to their own terms . . . enhances certainty, predictability, and uniformity of result." *Sonat Exploration*, 271 SW3d at 235 (citations omitted). "Texas courts have also recognized that applying the law of the forum fosters certainty, predictability, and uniformity, if for no other reason than the forum court's familiarity with the forum's law." *Bonn Operating Co v Devon Energy Production Co*, 2009 WL 484218, *7 (ND Tex), aff'd 613 F3d 532 (5th Cir 2010).

The MSA provides that Texas law would govern any dispute under it, with the forum to resolve it being Houston. Dkt 21-1 at 11 (MSA). When so agreeing, the parties recognized that such disputes could arise from operations anywhere across forty-nine different states. The notion of certainty, predictability, and uniformity of result take on added weight in such light.

*As to ease in the determination and application of the law to be applied.* The ease in the determination and application of the law to be applied "points to applying the law of the state where the injured party brought suit." *Chesapeake*, 94 SW3d at 177, citing *Maxus*, 817 SW2d at 57. All parties alleging injury brought action in Texas state court—Jones versus Nabors, and Nabors versus Deepwell. See Dkt 21-1 at 22–26; Dkt 1-2 at 1–9. This principle thus weighs in favor of applying Texas law.

In sum, the weighted contacts under § 188(2) of the Second Restatement indicate that Texas has a more significant relationship with the MSA both generally and as to the indemnification clause specifically.

B.   Other factors § 187(2)(b)

As noted above, the remaining factors under § 187(2)(b) include whether New Mexico "has a materially greater interest" than Texas in the enforceability of the contractual provision in dispute, and whether New Mexico "has a fundamental policy" that would be contravened by the application of the parties' chosen law. But such an inquiry needn't be undertaken where the more-significant-relationship test itself points to the parties' chosen law. See *Banta Oilfield Services*, 568 SW3d at 710–11; *Mary Kay*, 146 SW3d at 816.

The foregoing section established that Texas has a more significant relationship with the parties and transaction at issue than New Mexico. As such, the remaining factors under § 187(2)(b) needn't be considered.

iii.   Choice of law determination

In sum, the factors outlined in § 187(2)(b) compel the application of Texas law to this dispute. The contrary request for summary judgment by Deepwell will be denied.

b.   New Mexico Oilfield Anti-Indemnity Act

Section 12(d) of the MSA provides:

> In the event any provision of this Agreement is inconsistent with or contrary to any applicable law, rule, or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule or regulation, and this Agreement, as so modified, shall remain in full force and effect.

Dkt 21-1 at 9. Deepwell argues under this provision that "the defense, indemnity, and additional insured provisions" of the MSA don't "comply with the applicable New Mexico law" and should therefore "be nullified." Dkt 21 at 17–18.

It has been determined above that Texas law governs this indemnification action. The contrary request for summary judgment by Deepwell will be denied.

c.   Nabors as an additional insured under the insurance policy

Foreseeing the possibility that Texas law would apply to the MSA, Deepwell raises the fallback argument that it has complied with the terms of its policy with Liberty Mutual such that "Nabors *may* be deemed as an additional insured" thereunder. Dkt 21 at 18–19 (emphasis added). This would mean that Liberty Mutual "should defend Nabors per the policy and indemnify Nabors against an adverse judgment, if any." Id at 19.

This implicates several provisions of the CGL policy that Liberty Mutual issued to Deepwell.

As to coverage and exclusions, the policy in relevant part provides:

2. Exclusions

*This insurance does not apply to*:

. . . .

b.  Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion *does not apply* to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "*insured contract*", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "*insured contract*", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "*insured contract*"; and
>
> (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Dkt 30-5 at 16 (insurance policy) (emphasis added). And an *insured contract* is defined by the policy to include:

> f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Id at 28.

The CGL policy also contains the following endorsement, extending coverage to an *additional insured* when required by contract:

> A. Section II – Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

27

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and

2. Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

Dkt 30-5 at 59.

Deepwell points to the email from a claims specialist at Liberty Mutual in September 2019. Dkt 21 at 19; Dkt 21-1 at 36. It contends that Liberty Mutual there "conceded that Nabors may qualify as an additional insured if Deepwell and/or Jones was assigned a percentage of liability in the Underlying Lawsuit." Dkt 21 at 19. Deepwell also contends that it complied "with the terms of the applicable insurance policy" and "the terms of the MSA by obtaining the requisite insurance." Ibid. Deepwell says this is so because it "identified Nabors as an Additional Insured" in its Certificate of Insurance. Ibid; Dkt 21-1 at 34. Indeed, Section 9 of the MSA required Deepwell to obtain several types of insurance in various amounts and to name Nabors as an additional insured on those policies, and the insurance policy contains several endorsements (including the one depicted above) regarding additional insureds. Dkt 23-1 at 4–5 (MSA); Dkt 30-5 at 57–64. Deepwell thus concludes that, if Texas law applies and Nabors qualifies as an additional insured, then Liberty Mutual "should defend Nabors per the policy and indemnify Nabors against an adverse judgment, if any." Dkt 21 at 19.

Nabors insists that Deepwell must defend and indemnify it in the underlying action and that Liberty Mutual must provide coverage of $500,000 because the

MSA is an *insured contract* as defined in the policy. Dkt 30 at 23. This appears to be in accord with Deepwell's alternative argument that Liberty Mutual should defend and indemnify Nabors *if* it qualifies as an *additional insured*. Dkt 21 at 19.

Finally, for its part, Liberty Mutual says that it has no duty to defend Nabors but that it may have a duty to indemnify Nabors. Dkt 22 at 10–12.

"Whether an insurer has a duty to defend its insured is a question of law." *Lyda Swinerton Builders Inc v Oklahoma Surety Co*, 903 F3d 435, 445 (5th Cir 2018). Texas courts apply what's known as the *eight-corners doctrine* to answer that question. By this, a court must compare allegations within the four corners of the plaintiff's pleadings in the underlying action with provisions within the four corners of the insurance policy. *National Union Fire Insurance Co v Merchants Fast Motor Lines Inc*, 939 SW2d 139, 141 (Tex 1997, *per curiam*). When doing so, "allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders*, 903 F3d at 446. "If the petition pleads facts sufficient to create the *potential* of covered liability, then the insurer has a duty to defend the *entire* case, even if some of the alleged injuries are *not* covered." Id at 447 (emphasis in original). But if the petition only alleges facts excluded by the policy, then the insurer has no duty to defend. *Northfield Insurance Co v Loving Home Care Inc*, 363 F3d 523, 528 (5th Cir 2004). "Facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend." Ibid.

Liberty Mutual contends that the eight-corners doctrine prevents consideration of anything besides "the third-party plaintiff's pleadings . . . in light of the policy provision." Dkt 22 at 10. But a narrow exception to the eight-corners doctrine provides an avenue of discrete supplementation. The Fifth Circuit holds that the doctrine doesn't apply in the "very limited circumstances . . . when

it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Insurance*, 363 F3d at 531 (emphasis in original). The Texas Supreme Court hasn't expressly adopted this exception, though it has cited *Northland Insurance* with approval. *State Farm Lloyds v Richards*, 784 F App'x 247, 251 (5th Cir 2019). And while the Fifth Circuit recently certified the question to the Texas Supreme Court, it has yet to issue a ruling. *Bitco General Insurance Corp v Monroe Guaranty Insurance Co*, 846 F App'x 248, 252 (5th Cir 2021): "Is the exception to the eight-corners rule articulated in [*Northfield Insurance*] permissible under Texas law?". Consequently, *Northland Insurance* remains binding here.

The application of this doctrine to the issues at hand reveals the need for discrete supplementation. The policy at issue without question applies to bodily injuries "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement"— but only if such liability is assumed through an *insured contract* as defined in the CGL policy. Dkt 30-5 at 16 (insurance policy). Yet the operative underlying pleadings don't reference the MSA or policy at all, much less illuminate whether the former is an *insured contract* or whether Nabors is an *additional insured* under the policy. See Dkt 22-1. Indeed, even though Jones was a Deepwell employee when he was injured, he doesn't acknowledge that critical fact in his petition. See ibid; Dkt 20-1 at 20 (incident report). Nor does he even reference the state in which he was allegedly injured. See Dkt 22-1.

This makes it (as phrased in *Northfield Insurance*) "initially impossible to discern whether coverage is potentially implicated" based on the eight-corners doctrine. 363 F3d at 531. Extrinsic evidence is thus permitted because these issues—whether the MSA is an *insured contract*, whether Nabors is an *additional insured*, and

whether the injuries Jones allegedly sustained are covered by the policy—are questions that go "solely to a fundamental issue of coverage" and don't "overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." Ibid. Extrinsic evidence is also necessary to meaningful evaluation of the parallel arguments by Deepwell and Nabors regarding the duty to defend despite Liberty Mutual's contrary contention. See Dkt 21 at 19; Dkt 30 at 23; Dkt 22 at 10–12.

Extrinsic evidence establishes that the MSA is an *insured contract* under the CGL policy. The MSA provides that Deepwell "shall defend, indemnify, and hold harmless Nabors Group against all Claims arising from or related to (1) bodily injury to or death of any person in the Contractor Group," with the latter term including Deepwell employees like Jones. Dkt 23-1 at 6. This brings it within the definition of *insured contract* set out above, being a contract under which the insured assumes the tort liability of another party to pay for bodily injury. Dkt 30-5 at 28 (insurance policy).

Extrinsic evidence also establishes that Nabors could potentially be an *additional insured* under the CGL policy. The MSA provides, "The Nabors Group shall be named as additional insured in each of Contractor's policies, except Workers' Compensation." Dkt 23-1 at 5. And the policy defines an *additional insured* as an organization that's held liable for a bodily injury that's "caused, in whole or in part" by the acts or omissions of the insured or those acting on its behalf. Dkt 30-5 at 57. Jones' severed fingers inarguably constitute a bodily injury. Dkt 21-1 at 20 (incident report). Thus, for Nabors to be an *additional insured* in this action, Deepwell (or Jones as its employee) must be held liable to some extent in the underlying state court action. It's thus at present unclear whether Nabors is an *additional insured*. Indeed, a Liberty Mutual employee acknowledged this very point. See Dkt 23-7.

Summing up, *if* Texas law applies (which it does) *and* Nabors qualifies as an additional insured (which it might), then Liberty Mutual must defend Nabors according to

31

Deepwell's policy and provide Nabors with up to $500,000 in contractual indemnity for any liability. Summary judgment is thus appropriate to specify that Liberty Mutual (on behalf of Deepwell) must defend Nabors in the underlying action if Deepwell or Jones is assigned liability thereby making Nabors an *additional insured*.

### d.   Conclusion as to the motion for partial summary judgment by Deepwell

The motion by Deepwell for partial summary judgment will be granted in part and denied in part.

It will be denied as to the requests to apply New Mexico law and the New Mexico Oilfield Anti-Indemnity Act.

It will be granted as to the request for determination that Liberty Mutual (on behalf of Deepwell) has a duty to defend and indemnify Nabors if Nabors qualifies as an *additional insured* under the CGL policy.

### 4.   Motion for summary judgment by Liberty Mutual

Two arguments raised by Liberty Mutual in its motion for summary judgment are foreclosed by the disposition above. One is contention that New Mexico law should govern the claims in this action. Dkt 22 at 6–9. Instead, it has been determined that Texas law applies. The other is contention that Liberty Mutual has no duty to defend Nabors even if Texas law applies because Jones doesn't allege in the underlying state court action that Deepwell caused his injury. Dkt 22 at 10. Instead, it has been determined that Liberty Mutual may have such a duty.

Two other arguments by Liberty Mutual concern whether the indemnification claim is ripe for determination, and whether such claim is subject to a $500,000 limit. Id at 11.

### a.   Ripeness

Liberty Mutual argues that the claim by Nabors for indemnification isn't yet ripe and so should be dismissed. Id at 11. Nabors agrees that its indemnification claim isn't ripe, but it seeks abatement rather than dismissal. Dkt 30 at 23–24.

Unlike the duty to defend, the duty to indemnify isn't constrained by the eight-corners doctrine or determinable at the outset or in the midst of litigation. Instead, it's "well settled that the facts actually established in the underlying suit control the duty to indemnify." *DR Horton-Texas Ltd v Markel International Insurance Co*, 300 SW3d 740, 744 (Tex 2009) (quotation marks omitted). This typically means that "an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Colony Insurance Co v Peachtree Construction Ltd*, 647 F3d 248, 253 (5th Cir 2011). But the Texas Supreme Court holds that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Texas County Mutual Insurance Co v Griffin*, 955 SW2d 81, 84 (Tex 1997) (emphasis omitted).

It has already been determined that Liberty Mutual may have a duty to defend Nabors. And Liberty Mutual concedes that it may also have a duty to indemnify Nabors. See Dkt 22 at 11. It's therefore appropriate to abate this action, pending the resolution of the underlying state court action. See *Lopez v Canal Insurance Co*, 2015 WL 5097358, *3–5 (WD Tex); *Chartis Specialty Insurance Co v JSW Steel (USA) Inc*, 2015 WL 4378366, *3 (SD Tex).

The motion for summary judgment seeking dismissal on ripeness grounds will be denied. The action will instead be abated.

### b. The safe-harbor provision of the Texas Oilfield Anti-Indemnity Act

Liberty Mutual seeks summary judgment on its counterclaim for declaratory judgment by arguing that the Court should declare that the parties' indemnity agreement is *unilateral* and thus subject to the coverage cap of the TOAIA. Dkt 22 at 11.

The TOAIA caps coverage under a unilateral indemnity obligation at $500,000. Id at § 127.005(c). Section 127.001(6) defines a *unilateral indemnity obligation* as:

> an indemnity obligation in an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral in which one of the parties as indemnitor agrees to indemnify the other party as indemnitee with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's contractors but in which the indemnitee does not make a reciprocal indemnity to the indemnitor.

Deepwell agreed to (and ultimately did) purchase liability insurance to support its indemnity obligation to Nabors. Dkt 23-1 at 4–5, 12 (MSA); Dkt 30-5 (insurance policy). But Nabors didn't have any indemnity obligation to Deepwell. The MSA thus falls squarely within the definition of *unilateral indemnity obligation* established by the TOAIA—a point which Nabors concedes. Dkt 18 at ¶ 8. The coverage under the obligation is therefore capped at $500,000. See Tex Civil Practice & Remedies Code Ann § 127.005.

Summary judgment will be granted to Liberty Mutual on its counterclaim for declaratory judgment.

### c.   Conclusion as to the motion for summary judgment by Liberty Mutual

The motion by Liberty Mutual for summary judgment will be granted in part and denied in part.

It will be granted as to its counterclaim for declaratory judgment. As such, if Nabors is assigned any liability in the underlying action and Deepwell is required to indemnify it, then the amount of coverage for that obligation cannot exceed $500,000.

It will be denied as to the requests to apply New Mexico law and the New Mexico Oilfield Anti-Indemnity Act. It

34

will also be denied as to contention that Liberty Mutual has no duty to defend Nabors. And it will be denied as to argument that the lack of ripeness of the indemnification claim means the action should be dismissed. The indemnification claim will instead be abated.

### 5. Motion for partial summary judgment by Nabors

Nabors brought its claim for declaratory judgment under the Texas Declaratory Judgment Act. Dkt 1-2 at ¶ 17. But "the TDJA is a procedural, and not a substantive, provision and therefore does not apply to actions in federal court." *Vera v Bank of America*, 569 Fed App'x 349, 352 (5th Cir 2014). Even so, district courts may upon removal construe an action under the TDJA "as one brought under the federal Declaratory Judgment Act." *Honey Holdings I Ltd v Alfred L. Wolff Inc*, 81 F Supp 3d 543 (SD Tex 2015); see 28 USC § 2201, *et seq*. The declaratory judgment claims by Nabors will be so construed.

Nabors raises five arguments in favor of partial summary judgment on its claims, covering much the same ground as above.

*First,* Nabors seeks a declaration that Texas law governs the parties' rights and obligations under the MSA. Dkt 23 at 12–19. It argues under the Restatement (Second) of Conflict of Laws and Chapter 271 of the Texas Business and Commerce Code. Id at 12–19. Deepwell and Liberty Mutual argue that Chapter 271 of the Texas Business and Commerce Code is inapplicable and wasn't invoked in a timely manner. Dkt 31 at 5–9; Dkt 32 at 2–3. The details of that dispute aren't pertinent, as it has already been determined that Texas law applies to this dispute pursuant to the Restatement. The motion will be granted in that respect only.

*Second,* Nabors insists that Deepwell owes it contractual defense, indemnity, and attorney fees. Id at 19–21. But it has already been determined that Liberty Mutual may have a duty in those respects—with *may* being the operative phrasing because it's presently unclear

whether Liberty Mutual will have a duty to defend or indemnify Nabors, as no liability has been assigned in the underlying action. As such, it can't yet be definitively determined that Deepwell (or Liberty Mutual on its behalf) owes Nabors contractual defense, indemnity, and attorney fees. The motion will be denied in that respect.

*Third,* Nabors seeks a definitive declaration that "Liberty must provide coverage of $500,000 in accordance with TOAIA's safe harbor provision." Dkt 23 at 23. But it's presently impossible to calculate the exact amount of coverage that Liberty Mutual must provide, even supposing that it will be required to do so at all. The only aspect established with certainty is that any such coverage may not exceed $500,000. Because Nabors appears to ask for a more definitive determination, the motion will be denied in that respect.

*Fourth,* Nabors argues that the *additional insurance* and breach-of-contract claims should be abated pending the underlying state court action. Id at 23. It has already been determined that the indemnification claim will be abated because it isn't ripe. The *additional insurance* and breach-of-contract claims will also be abated pending resolution of the underlying state court action, as the facts and issues in that action are directly relevant to the claims here. The motion will be granted in that respect, thus abating the *entire* case.

*Fifth,* while the action remains in abatement, Nabors "seeks a declaration it is owed the separate and independent additional insurance coverage Deepwell was required to procure." Dkt 23 at 23. But it has already been determined that Nabors *could be* an additional insured under the policy—without any determination as to coverage at this juncture because no liability has been assigned to any party in the underlying action. The motion will be denied in that respect.

Deepwell and Liberty Mutual object to certain summary judgment evidence as to the above contained in an affidavit submitted by Nabors. Dkt 31 at 2–3; Dkt 32 at 2–3. That evidence needn't be specified because the

objections are moot. None of that evidence was necessary to the foregoing conclusions.

6. Conclusion

The various motions for summary judgment or partial summary judgment are all GRANTED IN PART and DENIED IN PART.

The motion for partial summary judgment by Defendant Deepwell Energy Services LLC is GRANTED as to the request for determination that Liberty Mutual has a duty to defend and indemnify Nabors if Nabors qualifies as an additional insured under the policy. It is DENIED as to the requests to apply New Mexico law and the New Mexico Oilfield Anti-Indemnity Act. Dkt 21.

The motion for summary judgment by Defendant Liberty Mutual Fire Insurance Company is GRANTED as to its counterclaim for declaratory judgment regarding the $500,000 coverage cap. It is DENIED as to its requests to apply New Mexico law and the New Mexico Oilfield Anti-Indemnity Act, as to argument that it has no duty to defend Nabors, and as to argument to dismiss the indemnification claim as unripe. Dkt 22.

The motion for partial summary judgment by Nabors Drilling Technologies USA Inc and Nabors Industries Inc is GRANTED as to the request for declaration that Texas law governs the parties' rights and obligations under the MSA and the request to abate the action pending resolution of the underlying liability determination. It is DENIED as to the requests for determination that Deepwell definitively owes it contractual defense, indemnity, and attorney fees, that Liberty Mutual must provide coverage of exactly $500,000, and that Deepwell (and thereby Liberty Mutual) currently owes it additional insurance coverage. Dkt 23.

This action is ABATED until the resolution of *Jones v Nabors Drilling Technologies USA Inc*, No 2018-87021, in the 125th District Court, Harris County, Texas, at which time Nabors must provide notice to all parties and this Court.

SO ORDERED.

Signed on October 21, 2021, at Houston, Texas.


Hon. Charles Eskridge
United States District Judge